**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KARL F. LUNDEBERG, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 20-2441 (JEB)** |

**MEMORANDUM OPINION**

Elderly naval-history buff Philip Lundeberg visited the National Museum of the United States Navy here in Washington to attend the 2018 annual meeting of the Naval Historical Foundation. With time to kill before the start of the meeting, he found himself drawn to a model of the *Philadelphia*, a gunboat he had written about, which was displayed on a platform in the museum's Revolutionary War exhibit. Engrossed in examining the ship, he did not see the edge of the slightly raised platform and unintentionally stepped off, resulting in a fractured hip.

Lundeberg having since died of unrelated causes, his son as executor of his estate — along with his widow — brought suit against the United States, which owns the museum, and the Naval Historical Foundation, which hosted the meeting, alleging that both were negligent in designing and maintaining the exhibit and that this negligence resulted in Lundeberg's fall. Each Defendant subsequently filed a cross-claim for indemnification or contribution against the other. Both now move for summary judgment as to their liability to Plaintiffs, as well as on their cross-claims. Because the Court will find that the exhibit's designers did not breach a duty of

reasonable care and that Lundeberg's own negligence contributed to his injury, it will grant summary judgment to both Defendants and need not consider the cross-claims.

## I. Background

As it must at this stage, the Court sets out the facts in the light most favorable to Plaintiffs. See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011). On June 2, 2018, 94-year old Philip Lundeberg visited the National Museum of the United States Navy for NHF's annual meeting. See ECF No. 1 (Complaint), ¶¶ 6, 11; ECF No. 26-2 (Def. Statement of Material Facts), ¶ 1. His son, Plaintiff Karl Lundeberg, and his granddaughter, Annika, accompanied him. See Def. SMF, ¶ 1. (The parties are referred to by their first names for clarity throughout this Opinion; no disrespect is intended.) The trio arrived well before the NHF meeting was set to begin, and, finding himself with time to spare, Philip ventured to the Revolutionary War exhibit. Id., ¶ 9. That exhibit was set on a raised wooden platform six or seven inches above the museum floor. Id. Philip's attention was drawn, in particular, to a model of the gunboat *Philadelphia*, which Philip had helped salvage and about which he had authored two works of naval history. Id., ¶ 13; see Compl., ¶ 12.

To reach the model, Philip walked up an entrance ramp and across the platform. See Def. SMF, ¶ 9. The vessel was housed in a three-sided display, such that a visitor could walk around all but one side of the model. See ECF No. 26-10 (Exhibit Pictures) at 4. Walking to the left side of the model required a visitor to enter the seventeen-inch space between the edge of the raised platform and the display case. See ECF No. 35-2 (Further Exhibit Pictures) at 2–3. As shown below, there was no guardrail along the edge of the platform, and, although there was a "Watch Your Step" sign on the side of the raised platform, there was no warning sign visible on the platform itself. See Exhibit Pictures at 4–5.



**Revolutionary War Exhibit, with *Philadelphia* model in box. <u>See</u> Exhibit Pictures at 5.**

Philip spent approximately five minutes examining the gunboat model while his granddaughter explored other parts of the exhibit. <u>See</u> Def. SMF, ¶¶ 20–21. Focused on assessing the accuracy of the model, Philip (without looking) stepped to his left and unknowingly off the edge of the platform. <u>Id.</u>, ¶¶ 22, 24, 26–27. Despite his attempts to stabilize himself with the cane he carried that day, Philip fell, causing an injury to his hip. <u>Id.</u>, ¶¶ 27–28.

Philip passed away in 2019, and his son Karl, executor of Philip's estate, and widow Eleanore filed this action in November 2020 after presenting their claims to the Department of the Navy. <u>See</u> Compl., ¶¶ 3–4, 7. The Complaint brings counts of negligence and loss of consortium against Defendants United States and NHF. <u>Id.</u>, ¶¶ 11–18. In its Answer to Plaintiffs' Complaint, the United States added a cross-claim against NHF asserting that it is

liable for any damages under the terms of the license agreement that governed its use of the museum. See ECF No. 9 (USA Answer/Cross-Claim). NHF responded with its own cross-claim against the United States, pressing that it is entitled to indemnification in the event it is found to be a joint tortfeasor. See ECF No. 11 (NHF Cross-Claim).

After discovery, the United States moved for summary judgment on Plaintiffs' claims and on NHF's cross-claim. See ECF Nos. 26-1 (USA MSJ on Pls. Claims) and 28-1 (USA MSJ on NHF Cross-Claim). NHF followed suit, seeking summary judgment on both Plaintiffs' claims and the United States' cross-claim. See ECF No. 27 (NHF MSJ).

## II. Legal Standard

Upon a party's motion, Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it can affect the substantive outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Liberty Lobby, 477 U.S. at 242.

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). The non-moving party's opposition, however, must consist of more than mere unsupported allegations. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record," such as affidavits, declarations, or other

evidence. See Fed. R. Civ. P. 56(c)(1). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249–50.

## III. Analysis

The Court takes up each of the several Motions in turn. Because its resolution of the United States' Motion on Plaintiffs' claims will obviate the need to engage with NHF's arguments, the Court begins there. It then briefly addresses NHF's Motion for Summary Judgment on the same, as well as Defendants' Cross-Motions.

### A. U.S. MSJ on Plaintiffs' Claims

The United States asserts that it is entitled to summary judgment on two grounds. First, it argues that it did not breach any duty of reasonable care in the design and maintenance of the Naval History Museum's facilities. Second, and in the alternative, Defendant maintains that Philip's own negligence was a substantial factor in his fall, and he is thus precluded from recovery under D.C.'s contributory-negligence doctrine. See Def. USA MSJ on Pls. Claims at 7–11.

#### 1. *Breach of Duty*

Plaintiffs bring this action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, under which tort liability "is determined according to the law of the place where the alleged acts or omissions occurred" — in this case, the District of Columbia. Harris v. U.S. Department of Veterans Affairs, 776 F.3d 907, 911 (D.C. Cir. 2015) (citation omitted). To prevail on their negligence theory, then, Plaintiffs must establish "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." Washington Metropolitan Area

Transit Authority v. Ferguson, 977 A.2d 375, 377 (D.C. 2009) (quoting Mixon v. Washington Metropolitan Area Transit Authority, 959 A.2d 55, 58 (D.C. 2008)). In addition, D.C. law requires Plaintiffs to show that the United States had "actual or constructive notice" of the dangerous condition that allegedly caused Philip's injuries. Id. (quoting Lynn v. District of Columbia, 734 A.2d 168, 170 (D.C. 1999)).

Defendant does not dispute that it owed a duty to Philip but contends that its actions (or lack thereof) did not breach that duty since the platform complied with D.C. building codes and was thus not a hazard. See USA MSJ on Pls. Claims at 8–9. It had no notice, the United States further asserts, of any defect or hazard in the exhibit, as no other injuries had occurred there — a fact that Plaintiffs dispute. Id. at 9–10. Plaintiffs, for their part, maintain that no notice was required because Defendant created the hazard, and that the United States was negligent in not installing a guardrail on the platform, not marking the edge more clearly, and placing the display case too close to the platform's edge. See ECF No. 31-2 (Pls. Opp.) at 18, 24–26.

Under D.C. law, "a landowner has a duty of reasonable care under all circumstances to all persons lawfully upon the landowner's property" — a group the parties agree includes Philip. Battle v. George Washington University, 871 F. Supp. 1459, 1461 (D.D.C. 1994) (citing Sandoe v. Lefta Associates, 559 A.2d 732, 742 (D.C. 1988)). That does not, however, require the landowner "to be a guarantor of the safety of all persons lawfully upon his premises." Id. Defining a landowner's responsibility with specificity is no simple task, but here the Court believes that Defendant met its obligation.

Pictures of the Revolutionary War exhibit demonstrate that the platform on which the *Philadelphia* was displayed is clearly a raised surface. To get onto the platform, a visitor must either climb a single step or walk up a ramp, as Philip and his companions did. See Exhibit

Pictures at 1–5; Def. SMF, ¶ 9. That ramp was, by Plaintiffs' own description, "marked with blue/gray (a different color than the color of the floor surface) no[-]skid tape to assure solid footing and also serve the purpose of communicating to the person using the ramp of the change in elevation." Pls. Opp. at 13. Having ascended this ramp, any reasonable person would know that he then stood in a raised area, and that there were boundaries of which he should remain aware. Those boundaries, moreover, were not difficult to notice. Consulting the pictures once more: the edge of the platform is clearly distinguishable from the floor six inches below, as the platform is a light wood, the floor a dark tile. See Exhibit Pictures at 4–6. Plaintiffs fault the United States for not making this edge even clearer with a visual cue, see Pls. Opp. at 18, but that would have done little to aid Philip, as he was "still looking at the ship model, so he wasn't able to see the edge" when he fell off the platform. See ECF No. 26-5 (Deposition of Annika Lundeberg) at 47:21–48:1; id. at 45:13–48:10.

As to the construction of the exhibit, that, too, satisfied Defendant's obligation to exercise reasonable care. The United States makes much of the fact that its exhibit complied with the guardrail requirements of the International Building Code, which mandates guards only along surfaces "that are located more than 30 inches . . . measured vertically to the floor or grade below." ECF No. 26-13 (Expert Opinion of Jonathan Leavitt) at 2 (quoting 2009 International Business Code § 1013). While compliance with building codes is not determinative of reasonable care, it is a relevant factor that lends favor to Defendant's position. See Girdler v. United States, 923 F. Supp. 2d 168, 188 (D.D.C. 2013) (finding building codes relevant to determining exercise of due care). Plaintiffs may believe that a guardrail would have increased the safety of the exhibit, but the fact that the authors of the applicable building code have determined that no rail is necessary suggests that "reasonable care" requires no such thing.

The placement of the display case relative to the platform edge, furthermore, does not violate a standard of reasonableness.  Plaintiffs may be correct that the design might be perceived by eager viewers as an invitation to walk into the space between the display case and the edge of the platform, but the seventeen inches of walking space there seems sufficient to allow most visitors to safely examine the ship.  See Further Exhibit Pictures at 2–3.  As Defendant points out, moreover, the model is also entirely visible from its front.  See Exhibit Pictures at 4–5, 7.  In any event, if the amount of walking space were not sufficient, this would not be a basis standing alone to deny summary judgment.

Neither party makes much headway with their final arguments: that the Revolutionary War exhibit's incident history entitles them to victory.  Plaintiffs assert that summary judgment is inappropriate because a fall occurred at the subject location in the weeks preceding Philip's, and that makes clear that Defendant knew that the exhibit was dangerous.  See Pls. Opp. at 21–22.  In support of their contention that such a fall occurred, Plaintiffs primarily rely on an email from Dale Lumme, a museum employee, stating that a visitor had fallen at the same location a week prior.  Id. (citing ECF No. 31-23 (Lumme Emails)).  But in his deposition, Lumme admitted that he was not present when the alleged fall happened and could not say for sure that it even took place at the Revolutionary War exhibit.  See ECF No. 26-17 (Deposition of Dale Lumme) at 76:5–77:11, 78:9–22.  Lumme's deposition is consistent with the United States' account, which reports that there was an incident at the museum's World War II exhibit not long before the NHF annual meeting.  See ECF No. 35 (USA Reply) at 5 (citing 26-15 (Deposition of Mark Weber, Continued) at 13–14).  Plaintiffs have thus not established that a prior fall occurred at the Revolutionary War exhibit.

The United States fares little better, however, as it provides only weak support for its contention that no prior incidents had occurred at the exhibit. See USA MSJ on Pls. Claims at 5–7. For that proposition, Defendant relies on the testimony of two museum employees, Mark Weber and Michael Galloway, both of whom testified that they were "unaware" of any prior incidents at the Revolutionary War exhibit. See ECF No. 26-8 (Deposition of Mark Weber) at 93:2–9; ECF No. 26-14 (Deposition of Michael Galloway) at 116:15–22. That establishes only their knowledge, not the exhibit's history. The United States also proffers evidence that Weber stated elsewhere in his deposition that "[t]here had been no previous incidents in this area," Weber Dep. at 61:20–21, but it is not clear that this statement was intended to convey that Weber knew conclusively that there had never been another incident. In any event, evidence of prior incidents (or the lack thereof) is not determinative of negligence, and, given its earlier discussion, the Court need not rely on the absence of prior incidents in drawing its conclusion. See Thompson v. District of Columbia, 182 A.2d 360, 361 (D.C. 1962).

The Court, consequently, finds that the United States did not breach a duty of reasonable care.

2. *Contributory Negligence*

Not wanting to put all its eggs in one basket, Defendant asserts a second basis upon which it believes it is entitled to summary judgment: Philip's contributory negligence. Under D.C. law, a victim of alleged negligence may not recover from the perpetrator if "his negligence was a substantial factor in causing his injury, even if the defendant was also negligent, as long as the plaintiff's negligence contributed in some degree to his injury." Whiteru v. Washington Metropolitan Transit Authority, 25 F.4th 1053, 1057 (D.C. Cir. 2022) (citing Sinai v. Polinger Co., 498 A.2d 520, 528 (D.C. 1985)). As a result, if the United States can establish that Philip

engaged in "conduct which falls below the standard to which a plaintiff should conform for his own protection," id. (citing Washington Metropolitan Area Transit Authority v. Cross, 849 A.2d 1021, 1024 (D.C. 2004)), Plaintiffs may not recover. "[I]n certain cases . . . where the facts are undisputed, and conceding every legitimate inference, only one conclusion may be drawn," it is appropriate for courts to determine this issue as a matter of law. Id. (quoting Blake v. Securitas Security Services, Inc., 962 F. Supp. 2d 141, 146 (D.D.C. 2013)). This is one such case.

      It is undisputed that Philip was 94 years old and using a cane to walk at the time of his fall. See Def. SMF, ¶¶ 3, 26. It is also undisputed that he walked up a ramp and across the platform to the *Philadelphia* model. Id., ¶ 9. As he had "excellent eyesight," id., ¶ 4, he presumably saw the edge of the platform on his way there. Reasonable care, therefore, would require Philip to have paid attention to his movements around the platform. But Philip — no doubt distracted by the model of the ship that inspired his scholarship — "continued looking at the ship as he was moving to the left" in the direction of the platform's edge, rather than looking where he was going. See Annika Dep. at 46:19–20. Indeed, he told museum employee Michael Galloway just after the fall that "he was looking at the *Philadelphia* model while walking and missed the step." ECF No. 26-12 (Accident Report Form) at 1. His failure to notice the edge of the platform, consequently, was negligent, since a "plaintiff has not exercised due care if he has 'failed either to look at all or to look observantly and see what should have been plainly visible.'" Poyner v. Loftus, 694 A.2d 69, 71 (D.C. 1997) (quoting Singer v. Doyle, 236 A.2d 436, 438 (D.C. 1967)) (finding legally blind individual contributorily negligent where he walked forward without looking and injured himself). Because "[t]he District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense

to the defendant's liability for negligence," that puts paid to Plaintiffs' suit. Whiteru, 25 F.4th at 1057 (alteration in original).

B. NHF's MSJ on Plaintiffs' Claims

Rather than blame Lundeberg or defend its own actions, NHF focuses its defense on another theory: any responsibility for maintaining the museum premises rested with the United States, not with it. See NHF MSJ at 8–11. That is so, NHF says, because it had no control over the premises and thus owed no duty to Plaintiffs. Id.

The Court need not wade too deeply into NHF's ownership defense, because, as explained above, even if it were an owner, it would have breached no duty. The Court's earlier analysis regarding contributory negligence also applies equally to Plaintiffs' attempts to recover from this Defendant, and so NHF, too, is entitled to summary judgment. See Whiteru, 25 F.4th at 1057–58.

C. Cross-Motions for Summary Judgment

That leaves another pond into which the Court need only dip its toe. The United States' and NHF's Cross-Motions dispute the allocation of responsibility between themselves and are thus relevant only in the event that either is found liable. Because the Court reaches the contrary conclusion, it need not address these arguments. Defendants' Cross-Motions will therefore be denied as moot.

## IV. Conclusion

For the foregoing reasons, the United States' and NHF's respective Motions for Summary Judgment on Plaintiffs' Claims will be granted. Their Cross-Motions for Summary Judgment as to each other will be denied as moot. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 29, 2022